**Tess Hellgren,** OSB No. 191622
tess@innovationlawlab.org
**Rachel Landry** *(pro hac vice application forthcoming)*
rachel@innovationlawlab.org
**Tiffany E. Wang** *(pro hac vice application forthcoming)*
tiffany@innovationlawlab.org
Innovation Law Lab
333 SW 5th Ave., Suite 200
Portland, OR 97240
Telephone: (503) 922-3042

**Amber Qureshi** *(pro hac vice application forthcoming)*
amber@qureshilegal.com
Law Office of Amber Qureshi, LLC
6925 Oakland Mills Rd, PMB #207
Columbia, MD 21045
Telephone: (443) 583-4353

*Attorneys for Plaintiff Innovation Law Lab*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| INNOVATION LAW LAB,<br><br>    Plaintiff,<br><br>    v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>    Defendant. | Case No. 3:25-cv-00066<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

**INTRODUCTION**

1. This is an action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq.*, seeking to compel Defendant U.S. Immigration and Customs Enforcement (ICE), to immediately release, and proactively disclose to the public, records of ICE's national and regional guidelines concerning how ICE makes detention placement and/or transfer decisions about noncitizens in its custody.

2. Defendant arrests and detains hundreds of thousands of individuals each year. Many of those individuals are initially booked into, or eventually transferred to, facilities hundreds or thousands of miles away from the location of their arrest. Little is publicly known about how Defendant chooses which detention facilities within its vast network to use for the initial placement of individuals, or how facilities are selected in the transfer process. Although Defendant has made some guidelines concerning detention placement and transfers for specific vulnerable populations available to the public, the full scope of such guidelines is not publicly available.

3. As a result, on May 2, 2024, Plaintiff Innovation Law Lab (Law Lab) submitted a FOIA request (FOIA Request) to Defendant requesting (a) manuals and memoranda regarding national ICE guidelines for the initial booking, and any subsequent transfer, of individuals in ICE's custody; (b) manuals and memoranda regarding regional ICE guidelines in the El Paso Field Office for the initial booking, and any subsequent transfer, of individuals in ICE's custody (collectively with (a), "Placement Guidelines"); and (c) proactive disclosure of electronic versions of the requested records, pursuant to Defendant's obligation under 5 U.S.C. § 552(a)(2) to release, *inter alia*, "administrative staff manuals and instructions to staff that affect a member of the public," 5 U.S.C. § 552(a)(2)(C), and "statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register," 5 U.S.C. §

552(a)(2)(B). Exhibit A, FOIA Request (May 2, 2024).[1]

4.  On June 11, 2024, Defendant issued a final response on Plaintiff's FOIA Request on the basis that Defendant could not locate any responsive records. *See* Exhibit C, ICE Determination (June 11, 2024). Plaintiff timely appealed Defendant's determination. *See* Exhibit D, Law Lab Appeal (Sept. 6, 2024). After considering Plaintiff's appeal, Defendant remanded the request to its FOIA office for further processing and response to Plaintiff. *See* Exhibit E, ICE Appeal Decision (Oct. 10, 2024).

5.  It has now been over eight months since Plaintiff filed its FOIA Request and over three months since Plaintiff's administrative appeal was remanded to Defendant for further processing and response. Despite its statutory obligation to do so, Defendant has failed to produce any records to Plaintiff or to proactively disclose the Placement Guidelines. Accordingly, Plaintiff is entitled to a judgment declaring that Defendant has violated FOIA and ordering Defendant both to release the Placement Guidelines to Plaintiff and to proactively disclose the Placement Guidelines to the public, in accordance with FOIA.

## JURISDICTION AND VENUE

6.  This Court has subject-matter jurisdiction under 5 U.S.C. § 552 *et seq.* (FOIA statute) and 28 U.S.C. § 1331 (federal question). This Court has jurisdiction to grant declaratory, injunctive, and further necessary or proper relief pursuant to 28 U.S.C. §§ 2201-2202 (Declaratory Judgment Act).

7.  Venue is proper in this District under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) because this is a civil action in which Defendant is a federal agency, there is no real

---

[1] Plaintiff submitted its original FOIA request to Defendant on March 25, 2024. *See* Exhibit B, Original FOIA Request (Mar. 25, 2024). Following Defendants' requests for clarification, as detailed *infra*, Plaintiff revised its request twice. Plaintiff submitted its final revised request to Defendant on May 2, 2024.

property involved in this action, and Plaintiff has its principal place of business in this District. Divisional venue is proper under Local Rule 3-2 because a substantial part of the events or omissions giving rise to the claim occurred in this division.

8.     On June 11, 2024, Defendant's FOIA Office informed Plaintiff that "no records responsive to [Plaintiff's] request were found." *See* Exhibit C. Plaintiff timely appealed that determination. *See* Exhibit D. On October 10, 2024, Defendant granted Plaintiff's appeal and remanded the request to its FOIA office for processing. *See* Exhibit E. Since then, Defendant has not made a determination on Plaintiff's FOIA Request pursuant to 5 U.S.C. § 552(a)(6)(A). Defendant's failure to make a determination within the statutory time period constitutes a constructive denial of the FOIA Request. Thus, Plaintiff is deemed to have exhausted administrative remedies. 5 U.S.C. § 552(a)(6)(C)(i).

## PARTIES

9.     Plaintiff Innovation Law Lab is a tax-exempt, not-for-profit charitable organization under section 501(c)(3) of the Internal Revenue Code, with a principal place of business in Portland, Oregon. Law Lab's mission is to harness the power of technology, law, and organizing to advance migrant justice. Law Lab has vast experience providing pro bono legal services to asylum-seeking immigrants in detention, including establishing pro bono projects in Artesia, New Mexico, and Dilley, Texas, to provide representation for immigrant families in detention. Since August 2019, Law Lab has been providing legal services and support to people detained in ICE custody at the Torrance County Detention Facility (TCDF) in Estancia, New Mexico. In addition to providing pro bono legal representation and advocacy, Law Lab, along with partner organizations, provides a legal orientation hotline via telephone as well as in-person group legal orientation sessions for individuals detained in TCDF. Law Lab also engages regularly in advocacy related to conditions faced by individuals detained at TCDF, including

recent advocacy with the Department of Homeland Security (DHS) Office of Civil Rights and Civil Liberties (CRCL) regarding egregious conditions of confinement and due process violations.

10. Defendant ICE is a component agency of DHS and is the federal agency primarily responsible for criminal and civil enforcement of U.S. immigration laws, including the apprehension, incarceration, and removal of noncitizens from the United States. Among ICE's duties is the management of its vast network of immigration detention centers. Defendant is an "agency" within the meaning of 5 U.S.C. § 552(f)(1) and has control over the records Plaintiff seeks.

## FACTUAL ALLEGATIONS

### ICE's Placement Guidelines

11. DHS has a statutory duty to arrange for "appropriate places of detention for [noncitizens] detained pending removal or a decision on removal." 8 U.S.C. § 1231(g)(1).

12. According to ICE's data, over the last six fiscal years, ICE's Enforcement and Removal Operations (ERO) has booked hundreds of thousands of people into custody each year in its vast network of over 130 detention centers nationwide.[2] ICE ERO's El Paso Field Office oversees at least five of these detention facilities located in Texas and New Mexico, including TCDF in Estancia, New Mexico.

13. In fiscal year 2015, approximately 60 percent of adults detained by ICE experienced at least one transfer, and among those, about 37 percent experienced at least one

---

[2] Immigr. & Customs and Enforcement, *Fiscal Year 2023 ICE Annual Report* 19 (Dec. 29, 2024), https://www.ice.gov/doclib/eoy/iceAnnualReportFY2023.pdf; Immigr. & Customs and Enforcement, *Authorized Non-Dedicated Facility List, Authorized Dedicated Facility List* (Sept. 9, 2024), https://www.ice.gov/doclib/facilityInspections/dedicatedNonDedicatedFacilityList.xlsx.

interstate transfer.[3]

14. ICE decides where to detain individuals, and which facilities, if any, to subsequently transfer them to, through a largely opaque process.

15. ICE's decisions regarding the placement and transfer of individuals in its custody has garnered significant public attention. Immigrants' rights advocates have expressed alarm over individuals' placement in and transfer to ICE detention facilities, particularly those with the most egregious conditions. *See* Exhibit A at 3-4.

16. TCDF, which is owned and operated by a private prison company, is one of these detention facilities with particularly egregious conditions. In March 2022 and September 2022, the DHS Office of Inspector General recommended "the immediate relocation of all detainees from the facility unless and until the facility ensures adequate staffing and appropriate living conditions."[4]

17. Since then, Plaintiff has published reports and disseminated information to the public about the conditions at TCDF. *See* Exhibit A at 4, n. 7. Plaintiff has also repeatedly informed DHS of the deficient conditions at the facility, including prolonged use of solitary confinement, insufficient food and water, and lack of adequate medical care. *See id* at 3, n. 5.

18. Despite these reports, ICE is continuing to detain individuals at TCDF and ICE frequently transfers individuals into and out of TCDF using a publicly undisclosed screening and

---

[3] *See* Emily Ryo and Ian Peacock, *The Landscape of Immigration Detention in the United States*, American Immigration Council (Dec. 2018), https://www.americanimmigrationcouncil.org/sites/default/files/research/the_landscape_of_immigration_detention_in_the_united_states.pdf.

[4] DHS Office of Inspector General, *Management Alert – Immediate Removal of All Detainees from the Torrance County Detention Facility* 2 (Mar. 16, 2022), https://www.oig.dhs.gov/sites/default/files/assets/2022-05/OIG-22-31-Mar22-mgmtalert.pdf; DHS Office of Inspector General, *Violations of ICE Detention Standards at Torrance County Detention Facility* (Sept. 28, 2022), https://www.oig.dhs.gov/sites/default/files/assets/2022-09/OIG-22-75-Sep22.pdf.

placement process.

19.     Defendant's Placement Guidelines are of immense public interest, as shown by public concern that detained individuals are being screened, placed, and transferred in abusive immigration detention facilities. Yet, there is still little known about how ICE determines which facility to book and/or transfer individuals in its custody.

20.     Defendant has made some of its Placement Guidelines available to the public. For instance, Defendant has disclosed memoranda and guidance regarding placement and transfer of particularly vulnerable populations, such as transgender individuals, unaccompanied minors, and those with complex medical or behavioral health needs. *See* Exhibit A at 1, n. 1.[5] Defendant has also published a directive concerning transfers of detained individuals.[6]

21.     However, not all Placement Guidelines are available to the public, and they have also not been published in the Federal Register.

22.     According to the Chief FOIA Officer for DHS, "proactive disclosure of information is fundamental to the faithful application of the FOIA" and the Attorney General has directed federal agencies to post "records online quickly and systematically in advance of any public request."[7] Moreover, "ICE has established specific records that the ICE programs must provide for proactive disclosure upon being finalized. Additionally, ICE FOIA will post (a)(2) provision documents as they are released or when the program offices identify new policies or

---

[5] *See also* Immigr. & Customs and Enforcement, *ERO Directive No. 11700.1, Appropriate Housing Placement for Complex Patients* (Feb. 2, 2022), https://www.ice.gov/doclib/foia/policy/directive11700.1.pdf.
[6] *See* Immigr. & Customs and Enforcement, *Policy 11022.1, Detainee Transfers* (Jan. 4, 2012), https://www.ice.gov/doclib/detention-reform/pdf/hd-detainee-transfers.pdf.
[7] DHS, *2024 Chief FOIA Officer Report* 22 (March 2024), https://www.dhs.gov/sites/default/files/2024-07/24_0729_PRIV_2024-Chief-FOIA-Officer-Report.pdf (quotation omitted).

procedures that should be proactively disclosed."[8]

23. Because Defendant has not publicly released the operative versions of the Placement Guidelines, affected members of the public are left with an incomplete understanding of Defendant's policies with respect to how individuals in ICE custody are being selected for placement in particular detention facilities or how ICE decides to transfer individuals from one facility to another. The requested information is critically important for individuals, their legal representatives and legal orientation providers, their family members, advocates, and other members of the public in understanding the policies that guide Defendant's decision making regarding the initial book in and transfers of detained individuals.

**Plaintiff's FOIA Request to Defendant**

24. On March 25, 2024, Plaintiff submitted a FOIA request to Defendant by using the electronic portal provided by Defendant. The request sought (1) operative versions of manuals, memoranda, and trainings covering the initial processing, placement, and any subsequent transfer, of individuals in ICE's custody; and (2) operative versions of intake forms related to the initial processing, placement, and any subsequent transfer, of such individuals. *See* Exhibit B.

25. By letter dated March 27, 2024, Defendant acknowledged receipt of the FOIA Request and assigned the request reference number 2024-ICFO-26655. *See* Exhibit F, ICE Acknowledgment Letter (Mar. 27, 2024). Defendant requested that Plaintiff resubmit its request within 30 days because Defendant determined that the request was "1) too broad in scope, 2) did not specifically identify the records which [Plaintiff is] seeking, or 3) only posed questions to the agency." *Id*.

26. On April 18, 2024, Plaintiff submitted a revised FOIA request to Defendant via Defendant's electronic portal. *See* Exhibit G, Revised FOIA Request (Apr. 18, 2024).

---

[8] *Id.*

27. By letter dated April 25, 2024, Defendant requested that Plaintiff provide a date range for the search by May 27, 2024. *See* Exhibit H, ICE Correspondence (Apr. 25, 2024).

28. On May 2, 2024, Plaintiff submitted another revised FOIA Request to Defendant with the requested information. *See* Exhibit A. Specifically, the FOIA Request sought the following records:

    1. Any and all currently operative versions, as of May 2, 2024, of manuals and memoranda concerning national guidelines for how ICE, including Enforcement and Removal Operations ("ERO") and the Removal Management Division ("RMD"), determines which ICE facility (a) to initially book and (b) subsequently transfer an individual in its custody into, including any accompanying intake forms, questionnaire guides, and/or case action worksheets.

    2. Any and all currently operative versions, as of May 2, 2024, of manuals and memoranda concerning regional guidelines for how the El Paso Field Office determines which ICE facility within its area of responsibility (a) to initially book and (b) subsequently transfer an individual in its custody into (requests 1 and 2 collectively, "Placement Guidelines"), including any accompanying intake forms, questionnaire guides, and/or case action worksheets.

29. The FOIA Request included citations to publicly disclosed Placement Guidelines, as examples of the kinds of records Plaintiff sought. *See* Exhibit A at 1, n.1; *see also* Exhibit D at 3.

30. Plaintiff further requested that Defendant proactively disclose the Placement Guidelines because the "operative versions of the Placement Guidelines fall squarely within the parameters and intent of the proactive disclosure requirements of FOIA." *Id*. (citing 5 U.S.C. § 552(a)(2)).

31. The FOIA Request also asked Defendant to waive all fees associated with the request under 5 U.S.C. § 552(a)(4)(A)(iii) and 6 C.F.R. § 5.11(k) "because disclosure is 'likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester' and Innovation Law Lab does not seek the Placement Guidelines for a commercial purpose." *Id*. (citing 5 U.S.C. §

8
Compl. for Declaratory & Injunctive Relief

552(a)(4)(A)(iii)).

32. By letter dated May 29, 2024, Defendant acknowledged receipt of the FOIA Request. *See* Exhibit I, ICE Acknowledgment Letter (May 29, 2024). Defendant granted Plaintiff status as a non-commercial requester and invoked a 10-day extension of time to respond under 5 U.S.C. § 552(a)(6)(B). *Id*. The letter provided no substantive response to the request.

33. On June 11, 2024, Defendant sent a final response to Plaintiff. *See* Exhibit C. Defendant claimed that it "conducted a search of the ICE Office of Enforcement and Removal Operations (ERO) for records responsive to [Plaintiff's] request and no records responsive to [Plaintiff's] request were found." *Id*. Defendant informed Plaintiff of its right to appeal Defendant's determination within 90 days. *Id*.

34. On September 6, 2024, by U.S. mail, Plaintiff submitted a timely appeal of Defendant's final response on the grounds that Defendant failed to conduct an adequate search for responsive records and did not cite to any relevant exceptions to justify its failure to produce documents. *See* Exhibit D.

35. On October 10, 2024, Defendant responded to Plaintiff's appeal and "determined that new search(es) or, modifications to the existing search(es), could be made" and remanded the appeal to its FOIA Office for processing. *See* Exhibit E.

36. As of January 13, 2025, Defendant's online portal for tracking FOIA requests, https://www.securerelease.us/, states the "Request Status" of FOIA Request 2024-ICFO-26655 as "Closed (No Documents Sent). Defendant's SecureRelease Portal also does not show Plaintiff's administrative appeal linked to this request.

37. Plaintiff has received no other correspondence from Defendant since Defendant remanded Plaintiff's appeal for processing.

38. As of January 13, 2025, it has been more than 55 business days since the FOIA Request was remanded to Defendant for further processing.

39. Defendant did not determine whether to comply with the FOIA Request by the deadlines set forth in 5 U.S.C. § 552(a)(6)(A) or (B). Defendant has failed to produce any records or make any substantive response to the FOIA Request.

## CLAIMS FOR RELIEF

### COUNT ONE

**Violation of FOIA, 5 U.S.C. § 552**
**Failure to Timely Respond**

40. All of the foregoing allegations are repeated and realleged as though fully set forth herein.

41. Pursuant to 5 U.S.C. § 552(a)(6)(A) and (B), Defendant was obligated to promptly produce records responsive to Plaintiff's FOIA Request.

42. Plaintiff submitted the FOIA Request on May 2, 2024. The FOIA Request was remanded to the agency for processing on October 10, 2024. Defendant failed to issue a response, including a determination of whether to comply with the request and the reasons therefore, in the time provided under 5 U.S.C. § 552(a)(6)(A)(i) (20 days, excluding Saturdays, Sundays, and legal public holidays) or within the time permitted in certain unusual circumstances pursuant to 5 U.S.C. § 552(a)(6)(B)(i) (10 additional working days).

43. Defendant's failure to disclose all responsive records within the statutory time period violates, at a minimum, 5 U.S.C. § 552(a)(6)(A) and (B) and the corresponding regulations.

## COUNT TWO

### Violation of FOIA, 5 U.S.C. § 552
### Failure to Proactively Disclose Records

44. All of the foregoing allegations are repeated and realleged as though fully set forth herein.

45. Defendant is obligated under 5 U.S.C. § 552(a)(2)(B) to proactively disclose, in electronic format and on an ongoing basis, "those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register." *See also Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 935 F.3d 858, 862 (9th Cir. 2019) ("Unlike FOIA's 'reactive' mechanism in § 552(a)(3), § 552(a)(2) identifies certain categories of records the agency must make available *on an ongoing basis*, no request necessary.") (emphasis added).

46. Defendant is obligated under 5 U.S.C. § 552(a)(2)(C) to proactively disclose, in electronic format and on an ongoing basis, "administrative staff manuals and instructions to staff that affect a member of the public." *See also Animal Legal Def. Fund*, 935 F.3d at 862.

47. The Placement Guidelines are administrative staff manuals that affect members of the public, including but not limited to individuals in ICE detention, their attorneys, and their families. The Placement Guidelines also contain statements of policy and interpretations which have been adopted by the agency but have not been published in the Federal Register.

48. Defendant has failed to proactively disclose the Placement Guidelines, and no legal basis exists for Defendant's failure to proactively disclose them.

34. Defendant's failure to proactively disclose the Placement Guidelines is in violation of 5 U.S.C. § 552(a)(2)(B) and (a)(2)(C).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully request that this Court:

a. Assume jurisdiction over this action;

b. Declare unlawful Defendant's failure to make a determination on the FOIA Request within the statutory time frame, failure to disclose the records requested by Plaintiff, and failure to proactively disclose the Placement Guidelines;

c. Order Defendant to expeditiously process and disclose all responsive, nonexempt records, and enjoin Defendant from improperly withholding requested records;

d. Order Defendant to proactively disclose the Placement Guidelines to the public in electronic format available on its website, including any future updated versions on an ongoing basis, in accordance with 5 U.S.C. § 552(a)(2);

e. Award Plaintiff reasonable attorneys' fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E), the Equal Access to Justice Act, and any other applicable provision of law; and

f. Grant such other relief as the Court may deem just, equitable, and appropriate.

DATED: January 13, 2025            Respectfully submitted,

By: *s/ Tess Hellgren*
**Tess Hellgren,** OSB No. 191622
tess@innovationlawlab.org
**Rachel Landry** *(pro hac vice application forthcoming)*
rachel@innovationlawlab.org
**Tiffany Wang** *(pro hac vice application forthcoming)*
tiffany@innovationlawlab.org
Innovation Law Lab
333 SW 5th Ave., Suite 200
Portland, OR 97240
Telephone: (503) 922-3042

**Amber Qureshi** *(pro hac vice application forthcoming)*
amber@qureshilegal.com
Law Office of Amber Qureshi, LLC
6925 Oakland Mills Rd, PMB #207
Columbia, MD 21045
Telephone: (443) 583-4353

*Attorneys for Plaintiff Innovation Law Lab*