# Exhibit B

March 25, 2024

U.S. Immigration and Customs Enforcement
500 12th Street, SW, Stop 5009
Washington, DC 20536-5009
*Submitted via Online Records Portal*

**RE:   Freedom of Information Act Request – Placement Guidelines & Intake Forms**

      **FEE WAIVER REQUESTED**

To Whom It May Concern:

    We, Innovation Law Lab ("Law Lab"), submit this request pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.* seeking the following records that have been prepared, modified, received, transmitted, collected, and/or maintained by the U.S. Immigration and Customs Enforcement ("ICE"):

1. Any and all operative versions, as of the date of this request, of manuals, memoranda, and trainings covering guidelines for the initial processing of adult individuals in ICE custody, their initial placement at a particular detention facility, and any subsequent transfer to another ICE detention facility (collectively, "Placement Guidelines").[1]

2. Any and all operative versions, as of the date of this request, of intake forms related to the initial processing of adult individuals in ICE custody, their initial placement at an ICE detention facility, and their subsequent transfer to other ICE detention facilities, such as and including questionnaire guides and case action worksheets (collectively, "Intake Forms").[2]

    Pursuant to 5 U.S.C. § 552(a)(2), Law Lab requests that ICE proactively disclose the above-described Placement Guidelines to the public by making them available in the electronic reading room. The operative versions of the Placement Guidelines fall squarely within the parameters and intent of the proactive disclosure requirements of FOIA. *See* 5 U.S.C. §

---

[1] *See, e.g.*, Memorandum from Thomas Homan, Exec. Assoc. Dir., Immigr. & Customs and Enforcement, "Further Guidance Regarding the Care of Transgender Detainees," (June 19, 2015), available at https://www.ice.gov/sites/default/files/documents/Document/2015/TransgenderCareMemorandum.pdf; Memorandum from Anthony S. Tangeman, Dir., Off. of Det. & Removal, Immigr. & Customs Enforcement, "Placement of Unaccompanied Alien Children" (Feb. 24, 2004), available at https://www.ice.gov/doclib/foia/dro_policy_memos/placementofunaccompaniedchildrenfeb242004.pdf (hereinafter, "Feb. 2004 Placement of Unaccompanied Children Memo").

[2] *See, e.g.*, Feb. 2004 Placement of Unaccompanied Children Memo, *supra* note 1 at 4–5 (containing an "Initial Placement Questionnaire Guide"); *see also* Memorandum from Anthony S. Tangeman, Dir., Off. of Det. & Removal, Immigr. & Customs and Enforcement, "Placement of Unaccompanied Alien Children," 3–4 (Sept. 15, 2003), available at http://www.ice.gov/doclib/foia/dro_policy_memos/placementofunaccompaniedchildrensep152003.pdf (containing a "Juvenile Case Action Worksheet").

1

552(a)(2). The proactive disclosure requirement is motivated by the need "to afford the private citizen the essential information to enable [them] to deal effectively and knowledgably with the Federal agencies."[3] Attorney General Merrick Garland has also emphasized that proactive agency disclosure of information is fundamental to the faithful application of the FOIA.[4]

Documents subject to 5 U.S.C. § 552(a)(2) must be "automatically available for public inspection." *Jordan v. U.S. Depot of Justice*, 591 F.2d 753, 756 (D.C. Cir. 1978). The Placement Guidelines fall squarely into at least two categories requiring proactive disclosure: (1) "statements of policy and interpretations which have been adopted by the agency and are not published in the federal register" and (2) "administrative staff manuals and instructions to staff that affect a member of the public." *See* 5 U.S.C. § 552(a)(2)(B), (C). The Placement Guidelines sought here are agency adopted statements of policy and interpretations not published in the federal register. *See* 5 U.S.C. § 552(a)(2)(B). Any staff manuals and instructions included in the Placement Guidelines also affect members of the public, including American citizens concerned with the rights of immigrants; advocates and legal representatives for individuals in immigration detention; the family and friends of detained individuals, and residents of communities surrounding ICE detention facilities. *See* 5 U.S.C. § 552(a)(2)(C). The proactive disclosure of the Placement Guidelines would empower advocacy groups and legal service providers to ensure fair and adequate treatment of adult individuals in ICE custody, increase public trust in government operations, and foster public awareness and engagement. Indeed, ICE has already publicly disclosed memoranda relating specifically to the placement of transgender individuals and unaccompanied minors held in ICE custody.[5] The same principles of proactive disclosure apply to the full scope of the Placement Guidelines described above.

If it is your position that responsive records exist but that certain records or portions thereof are exempt from disclosure, please identify the records that are being withheld and state the specific FOIA exemption claimed as to each record or portion thereof being withheld. Law Lab expects the release of all segregable portions of otherwise exempt records. In addition, please note that Law Lab seeks each record in its entirety. Accordingly, please provide all nonexempt portions of the requested records as "non-responsive," "out of scope," or the like.

Law Lab requests that responsive records be provided in electronic form wherever possible. For hard copies of the requested records, please furnish the records to: PO Box 40204, Portland, OR 97240.

---

[3] Off. of Info. Pol'y, U.S. Dep't of Just., "Proactive Disclosure of Non-Exempt Agency Information: Making Information Available Without the Need to File a FOIA Request" (last updated Oct. 26, 2022), available at https://www.justice.gov/oip/oip-guidance/proactive_disclosure_of_non-exempt_information.

[4] *See* Off. of Pub. Affs., U.S. Dep't of Just., Press Release, "Attorney General Merrick B. Garland Issues New FOIA Guidelines to Favor Disclosure and Transparency" (Mar. 15, 2022), available at https://www.justice.gov/opa/pr/attorney-general-merrick-b-garland-issues-new-foia-guidelines-favor-disclosure-and.

[5] *See supra* note 1.

**Request for Fee Waiver**

      Law Lab requests that all fees associated with this FOIA request be waived in accordance with 5 U.S.C. § 552(a)(4)(A)(iii) and 6 C.F.R. § 5.11(k) because disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester" and Innovation Law Lab does not seek the Placement Guidelines or intake forms for a commercial purpose. 5 U.S.C. § 552(a)(4)(A)(iii).

      A. *Disclosure of the Information Is in the Public Interest*

      The Placement Guidelines and Intake Forms will provide important, nonpublic information about ICE's operations and activities for determining the placement of individuals in its custody at detention facilities. This information is also directly pertinent to the procedural aspects governing the placement of individuals at Torrance County Detention Facility ("TCDF") in Estancia, New Mexico. TCDF, which is owned and operated by CoreCivic, detains individuals in ICE custody pursuant to an Intergovernmental Services Agreement ("IGSA") that ICE has signed with Torrance County. It has come to Innovation Law Lab's attention that individuals detained at TCDF face poor conditions and treatment, including prolonged use of solitary confinement, insufficient food and water, and lack of adequate medical care. Despite repeated advocacy on behalf of affected individuals, Innovation Law Lab understands that these substandard conditions persist as of the date of this letter.[6] ICE is continuing to both (1) place individuals in its custody at TCDF and (2) transfer them into or out of TCDF using a publicly undisclosed screening and placement process.

      The requested documents will, therefore, be meaningfully informative about the government's policies and practices with respect to placement and transfer and will contribute significantly to public understanding of how individuals in ICE custody are being selected for placement and transfer in or out of TCDF, as well as other detention facilities. Moreover, the requested records are of immense public interest, as shown by public concern that detained individuals are being screened, placed, and transferred in immigration detention facilities through the use of opaque policies and procedures.[7]

---

[6] *See, e.g.*, Letter to DHS from Innovation Law Lab, New Mexico Immigrant Law Center, Las Americas Immigrant Advocacy Center, & Santa Fe Dreamers Project, "Re: Relief from Torturous Conditions and Rights Violations at Torrance County Detention Facility" (Feb 24, 2023), available at https://innovationlawlab.org/media/TCDF_Letter-and-Report_02.24.23.pdf; Letter to DHS from Innovation Law Lab, New Mexico Immigrant Law Center, Las Americas Immigrant Advocacy Center, & Santa Fe Dreamers Project, "Re: Re: Relief from Torturous Conditions and Rights Violations at Torrance County Detention Facility" (Mar. 20, 2023), available at https://innovationlawlab.org/media/TCDF_Second-Letter-and-Reports_03.20.23.pdf.

[7] *See, e.g.*, Sharita Gruberg, "ICE's Rejection of Its Own Rules Is Placing LGBT Immigrants at Severe Risk of Sexual Abuse," Ctr. for Am. Progress (May 30, 2018), available at https://www.americanprogress.org/article/ices-rejection-rules-placing-lgbt-immigrants-severe-risk-sexual-abuse/ (noting that "[e]xcept for the transgender pod at Cibola, ICE has not provided information about whether ICE detained transgender women with other women, with men, or in isolation in these facilities[]"); Eunice Hyunhye Cho, "ICE's Lack of Transparency About COVID-19 in Detention Will Cost Lives," ACLU (May 22, 2020), available at https://www.aclu.org/news/immigrants-rights/ices-lack-of-transparency-about-covid-19-in-detention-will-cost-lives ("Even before the COVID-19 pandemic, Immigration and Customs Enforcement's (ICE) detention system was marked by its lack of transparency,

As evidenced by its active advocacy and public reporting, Innovation Law Lab has substantial expertise and experience regarding the treatment of individuals in ICE custody at TCDF, and has the capacity, intent, and demonstrated ability to effectively disseminate the information it receives to the public free of charge.[8]

Law Lab is a 501(c)(3) nonprofit organization that harnesses the power of technology, law, and activism to advance immigrant and refugee justice. Law Lab has vast experience providing pro bono legal services to asylum-seeking immigrants in detention, including establishing pro bono projects in Artesia, New Mexico, and Dilley, Texas, to provide representation for immigrant families in detention. Through its Anti-carceral Legal Organizing program, Law Lab works to win release, provide support, and facilitate legal representation for persons in ICE custody at detention facilities including TCDF.

Law Lab has been serving people detained in ICE custody at TCDF since August 2019. Since April 2023, Law Lab has conducted over 460 referrals for individuals at TCDF, and of those referrals Law Lab has provided legal services to more than 100 individuals at TCDF. In addition to pro bono legal representation and advocacy, Law Lab, along with partner organizations, provides a legal orientation hotline via telephone as well as in-person group legal orientation sessions for individuals detained in TCDF, the expenditures and resources for which are assumed in their entirety by Law Lab and its partners. Law Lab also engages regularly in advocacy related to conditions faced by individuals detained at TCDF, including recent advocacy with CRCL regarding egregious conditions of confinement and due process violations.

Law Lab disseminates information about immigration law and policy in numerous different media and forums for use in educating the public. For example, Law Lab publishes in-depth reports of critical interest that are disseminated to a wide public audience, including reports focusing on conditions and access to legal rights in immigrant detention. Law Lab uses innovative social media strategies to inform the public about immigration law and policy. The organization publishes periodic e-mail updates, long- and short-form videos, and other content systems to widely share information and analysis. Law Lab's website, innovationlawlab.org, is intended to share information and educate the public. This website is visited by many members of the public, elected officials, and individuals impacted by immigration law and policy. Law

---

accountability, and oversight."); Lisa Riordan Seville & Hannah Rappleye, "ICE keeps transferring detainees around the country, leading to COVID-19 outbreaks," NBC News (May 31, 2020), available at https://www.nbcnews.com/politics/immigration/ice-keeps-transferring-detainees-around-country-leading-covid-19-outbreaks-n1212856 ("ICE declined to provide information on how many transfers have occurred throughout the pandemic. . . . Individual detainees are often moved several times prior to deportation.").

[8] *See, e.g.*, Innovation Law Lab, "In New Report, Asylum Seekers Describe Sleep Deprivation, Torture Rooms, Rigged Deportation Process and Yet Another Attempted Suicide at Notorious Torrance County Detention Facility" (Feb. 15, 2023), available at https://innovationlawlab.org/press-releases/new-report-tcdf-feb-2023/; Innovation Law Lab, "New Mexico Groups Call On DHS to Provide Asylum Seekers Relief From Torturous Conditions, Investigate Retaliation and Abuse at Torrance County Detention Facility" (Mar. 1, 2023),
available at https://innovationlawlab.org/press-releases/new-mexico-groups-call-on-dhs-to-provide-relief-from-torturous-conditions-torrance/; Innovation Law Lab, "New Mexico Groups Send 2nd Demand Letter after DHS Fails to Provide Asylum Seekers Relief, Investigate Retaliation and Abuse at Torrance," (Mar. 21, 2023), available at https://innovationlawlab.org/press-releases/new-mexico-groups-send-2nd-demand-letter-after-dhs-fails-to-provide-asylum-seekers-relief-investigate-retaliation-and-abuse-at-torrance/.

Lab regularly issues press statements and other media alerts to an extensive list of local, regional, and national media outlets. Law Lab maintains regular contact with a broad set of reporters who cover immigration law and policy.[9]

Law Lab also does direct advocacy to elected officials at the local, state, and federal level. Law Lab intends to widely disseminate the requested information to the public through its website, e-newsletter, and other forums.

B. *Disclosure of the Information Is Not Primarily in the Commercial Interests of the Requester*

Law Lab is a 501(c)(3) non-profit organization. As detailed above, Law Lab seeks the requested records for the purposes of disseminating relevant information to the public. Law Lab does not have a commercial interest in the requested records.

Accordingly, we request that all fees associated with this FOIA request be waived because Innovation Law Lab is entitled to a public interest fee waiver. If, however, a waiver is not granted, please contact Tess Hellgren at 352-559-0897 or tess@innovationlawlab.org to advise us of the amount of any anticipated or estimated search, review, and duplication charges in excess of $25.00 before you conduct these activities.

***

We look forward to a response within 20 business days of the agency's receipt of this request as provided by 5 U.S.C. § 552(a)(6)(A)(i). If you have any questions regarding this request or need any additional information, please contact Tess Hellgren at 352-559-0897 or tess@innovationlawlab.org. Thank you for your prompt attention to this matter.

Sincerely,

INNOVATION LAW LAB

| Tess Hellgren | Rachel Landry | Jessica Gillespie |
| --- | --- | --- |
| Director of Legal Advocacy | Harvard Law Review Fellow | Spring Law Clerk |

---

[9] *See, e.g.*, Rafael Bernal, "Suicide attempts highlight mental health concerns in immigrant detention," The Hill (Mar. 3, 2023), available at https://thehill.com/latino/3881755-suicide-attempts-highlight-mental-health-concerns-in-immigrant-detention/ (citing Law Lab report); María Inés Taracena, "The Dark Truth of Biden's Immigration Policy," The New Republic (Apr. 12, 2023), available at https://newrepublic.com/article/171665/biden-immigration-policy-dark-truth (quoting Law Lab advocates); Megan Gleason, "Immigration detention system isn't as beneficial for local economies as some think, new report says," Source NM (July 14, 2023), available at https://sourcenm.com/2023/07/14/immigrant-detention-system-isnt-as-beneficial-for-local-economies-as-some-think-new-report-says/ (citing Law Lab report and quoting Law Lab advocate).