**SCOTT E. BRADFORD, OSB #062824**
United States Attorney
District of Oregon
**THOMAS S. RATCLIFFE, INSB #39994-45**
Assistant United States Attorney
Thomas.Ratcliffe@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR  97204-2902
Telephone: (503) 727-1000
        Attorneys for Defendant

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| INNOVATION LAW LAB, | Case No. 3:25-cv-66-AN |
| Plaintiff, | **DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, | |
| Defendant. | |

Plaintiff's Motion for Partial Summary Judgment, Dkt. #38, should be denied because Plaintiff has failed to demonstrate that there are no genuine disputes regarding the material facts.

In response to Plaintiff's motion, ICE's FOIA Director today submitted a new declaration further explaining ICE conduct in this case.  *See* 4/23/26 Supplemental Declaration of Fernando Pineiro ("Supp. Pineiro Dec.") at Dkt. #47.[1]  That declaration rebuts Plaintiff's factual contentions and demonstrates that the material facts in this case are either not resolved, or should be resolved in favor of ICE, making Plaintiff's attempt to secure partial summary judgment unavailing.

## SUMMARY JUDGMENT

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Most FOIA cases are decided on summary judgment.  *Animal Legal Defense Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 989 (9th Cir. 2016) (en banc).  The usual summary judgment standard applies to FOIA cases.  *Cameranesi v. United*

---

[1]    Government counsel learned yesterday from agency counsel that ICE issued an order last week using emergency funding to require employees to return to work despite the continuing partial shutdown of DHS.  That order allowed ICE's FOIA Director to become available to prepare a new declaration.  Government counsel has been informed that the emergency funding may expire before the end of the current federal pay period, which could mean that ICE's FOIA Director, the FOIA office, and agency counsel may again be furloughed.

**Page 2 –    Defendant's Opposition to Plaintiff's
          Motion for Partial Summary Judgment**

*States Dep't of Defense*, 856 F.3d 626, 636 (9th Cir. 2017).  The Court views the evidence in the light most favorable to the non-moving party, decides whether there are any genuine issues of material fact, and applies the relevant, substantive law.  *Id.*  If there are genuine issues of material fact, the district court should proceed to an adversarial hearing or bench trial.  *Id.*

"In a FOIA action, the Court may award summary judgment to the agency on the basis of affidavits when the affidavits reasonably describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrating that the information withheld logically falls within the claimed exemption, and are not controverted by evidence of agency bad faith.'" *Trans Union LLC v. Federal Trade Comm'n*, 141 F. Supp. 2d 62, 67 (D.D.C. 2001) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)); *see also Church of Scientology v. U.S. Dept. of Army*, 611 F.2d 738, 742 (9th Cir. 1980).

To avoid summary judgment, the non-moving party must produce significant probative evidence showing a genuine issue of material fact exists. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  "[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996).  Summary judgment is appropriate if the non-

**Page 3 –    Defendant's Opposition to Plaintiff's
          Motion for Partial Summary Judgment**

moving party fails to offer "evidence on which a jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## I.    ICE conducted a search reasonably calculated to find the records responsive to Plaintiff's FOIA request

FOIA requires an agency to demonstrate that it has conducted a search that is "reasonably calculated to uncover all relevant documents." *Hamdan,* 797 F.3d at 770. An agency can establish that its search was adequate by presenting reasonably detailed, non-conclusory affidavits that are submitted in good faith. *Id.* Affidavits presented by an agency to show the adequacy of its response are presumed to be in good faith. *Id.* When a court evaluates whether a FOIA search was adequate, the issue is "not whether there might exist any other documents possibly responsive to the request, but whether the *search* for those documents was *adequate*." *Id*., 770-71; (italics in original; cleaned up).

Plaintiff claims ICE failed to conduct a reasonable search, meaning one reasonably calculated to uncover all relevant documents. Mot. at 20. Plaintiff first argues that ICE unreasonably misconstrued and limited the scope of Plaintiff's requests, both with respect to the timeframe and the search terms. *Id*. at 20-22; 26-28.

**Page 4 –    Defendant's Opposition to Plaintiff's**
**              Motion for Partial Summary Judgment**

As ICE FOIA Director Pineiro (Pineiro) now explains, Plaintiff is wrong because the ICE searches were not limited to the illustrative examples provided in Plaintiff's FOIA requests. Supp. Pineiro Dec. ¶ 10. Instead, the searches "encompassed all the national and regional guidance related to placement and transfer, consistent with the subject matter of both requests." *Id.*; *see also* ¶¶ 8-18. As for the interplay between the time periods at issue in the Plaintiff's First and Second FOIA Requests, Pineiro explains in detail why "[n]o responsive records were excluded based on date." *Id.* at ¶¶ 13-18.

Plaintiff also argues that ICE did not identify all "reasonable custodians and locations." Mot. at 24. Plaintiff asserts that ICE's declarations are "vague and conclusory" and asserts that ICE did not "adequately explain why it limited its search to certain custodians." *Id.* (quoting *W. Res. Legal Ctr. V. Nat'l Oceanic & Atmospheric Admin.*, No. 3:19-cv-01119-AC, 2020 WL 6829767, at *10 (D. Or. Nov. 20, 2020)). Plaintiff takes issue with ICE's initial decision to search within Enforcement and Removal Operations (ERO) and then expand the queried components/offices after engaging with Plaintiffs in an attempt to resolve this case. Mot. at 25.

As Pineiro now explains, ERO was the logical starting point for ICE's searches, but ICE then expanded its inquiries to other components and offices that might have had responsive materials. Supp. Pineiro Dec. ¶¶19-47

**Page 5 –    Defendant's Opposition to Plaintiff's
            Motion for Partial Summary Judgment**

(identifying at least five other components, plus the Miami Field Office, that were queried).  Pineiro also now explains ICE's decision to inquire of an Assistant Field Director (AFOD) instead of a Field Office Director (FOD), and to employ the assistance of an analyst instead of senior officials at headquarters.  Id. at ¶¶ 44-47.  These decisions were reasonable in light of the information Plaintiff sought.

Importantly, Pineiro responds to Plaintiff's claim that the Guantanamo Memorandum of Understanding (MOU) somehow demonstrates that ICE withheld unpublished policy directives.  *Id*. at ¶¶ 36-40.  The Guantanamo MOU is not an ICE-issued detention placement directive governing day-to-day detention placement decisions.  *Id*. at ¶ 37.  Instead, it is a "DHS-level agreement concerning broader interagency coordination."  *Id*.  "Its existence does not establish that ICE maintained [a] separate Guantanamo-specific placement policy" or "standalone ERO directives under that title."  *Id*. at ¶ 38.  ICE's searches "did not identify separate Guantanamo-specific or high-profile-arrest[] directives distinct from the broader detention and transfer guidance already maintained by ICE."  *Id*. at ¶ 40.

ICE used search terms and methods reasonably calculated to locate responsive records, as explained in great detail by Pineiro's new declaration.  *See* Supp. Pineiro Dec. at ¶¶ 48-70.  First, ICE did not use a single, universal

**Page 6 –    Defendant's Opposition to Plaintiff's**
**                Motion for Partial Summary Judgment**

list of search terms across all offices because each office organizes and stores records in their own organizational system. *Id*. at ¶ 48. Instead, ICE tailored search terms to the organizational practices of each office. *Id*. This approach ensures that records are not missed "due to rigid or inappropriate search term selection." *Id*. Pineiro provides many examples of this in his new declaration. *Id*. at ¶¶ 50-58.

Plaintiff finally claims that ICE's search "failed to uncover responsive records." Mot. at 22. They cite documents like the Initial Placement Questionnaire, Juvenile Action Worksheet, Directive 6000, and Directive 24002 to support their claim that "ICE produced no guidance, directives, or similar records that explain how officials make decisions about where to initially detain individuals." Mot. at 23. But their FOIA requests sought categories of operative guidance regarding placement and transfer decisions. Supp. Pineiro Dec. at ¶ 60. For that reason, ICE records custodians searched by subject matter, not precise titles. *Id*. at ¶ 62. As for Plaintiff's concern that ICE did not produce the Detainee Transfer Checklist, that document was, in fact, included in ICE's June 2025 supplemental production at Bates Nos. 155 to 157. *Id*. at ¶ 63.

Plaintiff argues that it "strains credulity to suggest that there are no applicable written guidelines concerning the initial placement of individuals

**Page 7 –  Defendant's Opposition to Plaintiff's
            Motion for Partial Summary Judgment**

in ICE detention," or for transfers within an area of responsibility. Mot. at 23-24. Pineiro's new declaration directly addresses this. Supp. Pineiro Dec. at ¶¶ 64-65. ICE simply "does not maintain a single[,] uniform[,] nationwide directive that prescribes initial placement decisions for all detainees in all circumstances." *Id*. at ¶ 64. Instead, "[i]nitial placement decisions are operational determinations made in real time" based on variables like whether a detention facility is available, its bed space, its security classification, and a detainee's gender, medical and mental health status. *Id*. at ¶ 65. "Because those factors vary from case to case and often change based on current operational conditions, placement decisions depend on contemporaneous operational judgment rather than fixed[,] written rules that could uniformly direct placement outcomes in every circumstance." *Id*.

ICE's searches for records responsive to Plaintiff's FOIA requests were reasonably calculated to uncover all relevant documents.

## II.    ICE Properly Disclosed Records on its Website's Library

Plaintiff next accuses ICE of failing to disclose all non-exempt, responsive national guidelines and policies on ICE's FOIA library website. Mot. at 28. Plaintiff points to what it characterizes as guidelines that ICE produced in this case but has not posted to ICE's FOIA website. *Id*. Plaintiff seems to believe that any record responsive to Plaintiff's FOIA

**Page 8 –    Defendant's Opposition to Plaintiff's
            Motion for Partial Summary Judgment**

requests must be published on ICE's library website, but that is not accurate. Supp. Pineiro Dec. at ¶¶ 71-82. The intake forms, questionnaires, transfer worksheets, screening forms, checklists and similar items – like the Initial Placement Questionnaire and Juvenile Action Worksheet – are not required to be posted on ICE's library because those things are not agency-wide policies or guidance. *Id*. at ¶ 73. Instead, ICE's library website includes formal detention standards, transfer directives, policy manuals, and other records appropriate for publication, including Directive 11022.1 and national detention standards governing detainee transfers. *Id*. at ¶ 79. The fact that ICE searched for and produced additional operational records in response to Plaintiff's FOIA requests does not establish that those records existed as separately published national policy directives that must be published on the library website. *Id*. at 82.

### III.  ICE properly withheld information under Exemption 7(E)

Plaintiff alleges that ICE improperly withheld or redacted the Discharge and Transfers document and argues that ICE's explanation for the redactions are insufficiently detailed to allow the Court to assess the validity of the exemptions. Mot. at 29. Plaintiff asserts that ICE failed to show that the document was compiled for a law enforcement purpose. *Id*. at 30.

**Page 9 –    Defendant's Opposition to Plaintiff's
          Motion for Partial Summary Judgment**

Plaintiff also claims that ICE failed to show that disclosure of the Discharge and Transfer Guide would cause the harms contemplated by Exemption 7(E). *Id*. at 31.

Pineiro's new declaration addresses Plaintiff's claims. Supp. Pineiro Dec. at ¶¶ 83-100. Most importantly, Pineiro explains that the Discharge and Transfer document itself states that it "serves as a Discharge and Transfer guide for eClinical Works (eCW) version 12" – reflecting the document's role as an instruction manual for ICE's *internal computer systems*, not ICE's general discharge policy, medical care standards, or transfer procedures. *Id*. at ¶¶ 85-88. The redactions ICE applied to the document "do not concern medical judgment or healthcare policy." *Id*. at ¶ 89. Instead, the document provides technical instructions regarding how the eCW system operates – information that, if disclosed, "would provide a roadmap to how personnel process detainee movement, manage custody transitions, and execute transfers" within the eCW system. *Id*. at ¶ 91. As such, ICE properly redacted the document before disclosure.

Additionally, Plaintiff argues that ICE failed to reasonably segregate non-exempt information, attacking the sufficiency of ICE's explanation for how the segregation was done. Mot. at 32. The new Pineiro declaration further explains ICE's review and segregation of non-exempt information.

**Page 10 – Defendant's Opposition to Plaintiff's**
                      **Motion for Partial Summary Judgment**

Supp. Pineiro Dec. at ¶¶ 92-100. "Because the exempt technical information is embedded through the substantive portions of the document, further segregation would either disclose the protected internal system functionality itself or would leave only isolated fragments without meaningful information value." *Id*. at ¶ 95. ICE's review and segregation decisions were appropriate.

## IV.    ICE Made Timely Determinations on Plaintiff's Requests.

Plaintiff argues that ICE did not comply with FOIA's timing provisions. Mot. at 34. Pineiro now explains that "ICE did not intentionally delay responding to Plaintiff's request[s]." Supp. Pineiro Dec. at ¶102; *see also* ¶¶ 101, 103-108. Instead, the "timing of the initial production reflected the ordinary administrative workload of the ICE FOIA Office, including a substantial FOIA backlog," and was complicated by the need for ICE to search among "multiple operational offices within" ERO and with multiple records custodians and storage systems. *Id*. at ¶¶ 102-104. Plus, after Plaintiff raised concerns about ICE's initial FOIA production, ICE conducted additional searches to supplement the production. *Id*. at ¶ 106. ICE's productions "reflected continued review of Plaintiff's requests," not a failure or refusal to conduct a reasonable search." *Id*. at ¶ 108.

## V.    ICE Properly Denied Plaintiff's Request for Expedited Processing

Page 11 –    Defendant's Opposition to Plaintiff's
              Motion for Partial Summary Judgment

Plaintiff argues that the urgent need to inform the public about ICE's placement and transfers procedures justified expedited processing of the FOIA request.  Mot. at 35-36.  As Pineiro explains in the new declaration, ICE denied Plaintiff's request for expedited processing of the Second FOIA Request in April 2025 but continued processing the Second FOIA Request. Id. at ¶¶ 109-116.  ICE then concluded in mid-June that the Second FOIA Request was fully encompassed by the First FOIA Request.  *Id*. at ¶¶ 114-116.  ICE then concluded that any records responsive to the Second FOIA Request had either already been produced or did not exist.  *Id*. at ¶ 116. Given the overlap between the First and Second FOIA Requests and short turnaround for the Second FOIA Request, the effect of ICE's decision to deny expedited processing was *de minimis*.

**CONCLUSION**

**Page 12 –   Defendant's Opposition to Plaintiff's
                 Motion for Partial Summary Judgment**

Plaintiff's motion for partial summary judgment should be denied.

Dated: April 23, 2026

SCOTT E. BRADFORD
United States Attorney
District of Oregon

*/s/ Thomas S. Ratcliffe*
Thomas S. Ratcliffe
Assistant U.S. Attorney
Attorneys for Defendant

**Page 13 –  Defendant's Opposition to Plaintiff's
Motion for Partial Summary Judgment**